IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02299-MSK-CBS

THOMAS HOWELL,

    Plaintiff,

v.

CENTRIC GROUP, LLC; and
SCENTOILS.COM, INC.,

    Defendants.

---

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on Defendant Centric Group, LLC's Motion for Summary Judgment **(#82)**, to which Plaintiff Thomas Howell responded **(#86)**, and Centric replied **(#82)**. Mr. Howell also submitted a sur-reply (**#101**) addressing issues raised in Centric's reply. Mr. Howell also submitted a Motion for Summary Judgment (**83)**, to which Centric responded (**#85**), and Mr. Howell replied (**#91**)[1]. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### II. Material Facts

---

[1] Mr. Howell also filed a Motion to Amend his Motion for Summary Judgment (#**90**), which Centric opposes (#**95**), and in support of which Mr. Howell replied (#**98**). The Court concludes that the amendments sought by Mr. Howell amount to merely supplementary argument and will grant the motion.

The following facts are, for purposes of the parties' motions, undisputed. Mr. Howell is an inmate in the custody of the Colorado Department of Corrections ("CDOC"). At some point before or around 2006, finding the air in his cell to have an unpleasant smell, Mr. Howell acquired a bottle of anise-scented oil from the prison canteen. The bottle of oil, sold by Defendant Centric, bore minimal product labeling or instructions. The bottles label reads simply:

> Access[2]
> Essence Oil
> Anise
> Warning: Not for internal use
> 1 oz., Net wt. 30 ml.

Between July 28, 2006 and August 2, 2006, Mr. Howell repeatedly applied the oil to the area between his nose and upper lip, three to four times per day. In addition, on August 2, he also held the bottle to his nose for extended intervals (at least five minutes at a time) for several hours.

The next morning, Mr. Howell experienced pain, bleeding, and irritation around the area where he had applied the oil to his upper lip. He sought treatment from the prison's medical staff, and was diagnosed as having a "rash and other nonspecific skin eruption - probably chemical burn to right side upper lip adjacent to nares." He received further medical treatment on September 5, 2006, at which time the rash had abated, but Mr. Howell reported that "he can't smell any more." He continued to receive periodic treatment, and by March 6, 2007, the rash had resolved to a small scar, but Mr. Howell stated that he still had no sense of smell. Medical records from this visit indicate that Mr. Howell's loss of smell was likely "due to injury of specialized nerve tissue at the top [of his] nose and his sense of smell may never come back."

---

[2]This appears to be some sort of brand name.

It is undisputed that Centric provided the oil to CDOC for sale through the prison canteen. Centric did not manufacture the oil itself but rather obtained it from Defendant Scentoils.com, also known as J & N Enterprises ("J&N"). J & N purchases anise oil in bulk from a manufacturer, bottles and labels it, and sells it to Centric for distribution. Centric does not create and furnish J & N with specifications for the production of anise oil, control any aspect of the manufacturing process, nor modify the oil in any way prior to sale.[3] Centric states that, despite selling several thousand units of anise oil, it has never received any reports of allergic or adverse reactions to the oil.

The record indicates that, in 2005, CDOC requested information about the anise oil product from Centric. Centric does not apparently maintain any particular information about the oil itself, but did respond to CDOC by providing it with a Materials Safety Data Sheet ("MSDS") that J&N had produced regarding the oil. An MSDS advises those obtaining a chemical product of the various properties and hazards of that product. In this case, the MSDS for the anise oil contained the following advisements regarding health hazards posed by the oil[4]:

> -MAY BE IRRITATING TO SKIN AND EYES
> -VAPOR MAY BE IRRITATING TO THROAT AND LUNGS
> -BREATHING HIGH CONCENTRATIONS OF VAPOR MAY

---

[3] J&N has separately moved for summary judgment. Although that motion is not yet fully briefed, the Court observes that J&N takes the position in its motion that Centric, as J&N's customer, dictates the contents of the labels that J&N places on the bottles it provides to Centric. The affidavits and other evidentiary materials supporting Centric's motion state that Centric does not "furnish J&N with specifications for production of the anise oil" and "does not exercise any significant control over any part of the manufacturing process," but it is not clear to the Court whether these statements are intended to refer to the manufacture of the oil, its bottle, and label, or whether these statements refer only to Centric's role in the manufacture of the oil itself. In any event it is unnecessary for the Court to resolve this apparent dispute for purposes of the instant motion.

[4] A revised MSDS, created in April 2010, omits most of these warning, stating only that "acute exposure" to the product "may be irritating to skin, eyes, and respiratory system."

    CAUSE ANESTHETIC EFFECTS
    -REPEATED CONTACT MAY CAUSE ALLERGIC
    DERMATITIS

### III. Issues Presented

Mr. Howell brought this suit against Centric and J&N. Construed liberally, his Second Amended Complaint (#**76**) alleges four claims[3]: (i) common-law negligence, (ii) negligence *per se*, in that the Defendants' manufacture and distribution of the oil violated C.R.S. § 25-5-403, a statute prohibiting misbranded drugs, devices, or cosmetics; (iii) a common-law claim for strict products liability; and (iv) a common-law claim for failure to warn.

Centric moves for summary judgment on all of Mr. Howell's claims, raising three primary arguments: (i) because it is not the manufacturer of the oil, it is not subject to liability under Colorado's Product Liability Act; (ii) with regard to the failure to warn claim, Mr. Howell cannot show that Centric was aware of any defect in the product prior to Mr. Howell's injury; and (iii) with regard to all claims, Mr. Howell cannot show that the use of the product was the cause of Mr. Howell's injury.

Separately, Mr. Howell moves for summary judgment in his favor on his claims.

---

[3]The Court is mindful that Mr. Howell is proceeding *pro se* and, therefore, the Court construes Mr. Howell's pleadings liberally and holds Mr. Howell to a "less stringent standard" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, cannot act as a *pro se* litigant's legal advocate, and a *pro se* plaintiff retains the burden to allege sufficient facts to state a viable claim. Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court must apply the same standard to counsel licensed to practice law and to a *pro se* party. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### IV.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

When the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters

judgment.

When the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Because the determination of a motion for summary judgment can be affected by whether the movant has the burden of proof, the Court determines the motions independently beginning with Centric's motion.

### V. Analysis

**A. Centric's motion**

The Court turns first to Centric's contention that Mr. Howell cannot establish all of the necessary elements of any of his claims.

1. Product Liability Statute

Centric's first argument concerns the application of a provision of Colorado's Product Liability Act. C.R.S. § 13-21-402(1) provides that "no product liability action shall be commenced or maintained against any seller of a product unless said seller is also the manufacturer of said product . . . ." (Emphasis added). Centric argues that J&N (or J&N's own upstream distributor) is the "manufacturer" of the oil, and thus, Centric, as seller, is not subject to any products liability claims.

The statute defines a manufacturer broadly. It includes: (i) the common understanding of the term "manufacturer," namely, "a person or entity who designs, assembles, fabricates,

produces, constructs, or otherwise prepares a product . . . prior to the sale of the product to a user or consumer"; (ii) a seller who "creates and furnishes a manufacturer with specifications relevant to" the defective component or character of the product; (iii) a seller who alters or modifies a product prior to its sale; or (iv) "any seller who has actual knowledge of a defect in a product," among others. C.R.S. § 13-21-401(1) (emphasis added). To hold a seller liable as a manufacturer under the "knowledge" provision of § 13-21-401(1), a plaintiff must establish that the seller "not only had actual knowledge of the design and use of the final product, but also actual knowledge that the final product was unreasonably dangerous without a warning." *Bond v. E.I. DuPont De Nemours and Co.*, 868 P.2d 1114, 1119 (Colo.App. 1993).

Centric argues that Mr. Howell cannot show that it fits the definition of a "manufacturer" because it did not manufacture, provide specifications for, or otherwise alter the product. In addition, Centric contends that Mr. Howell cannot demonstrate that it had actual knowledge of the alleged defect such that it should be deemed a manufacturer under the statute.

Here, the alleged "defect" in the anise oil was Centric's failure to give adequate warning to users that the product could cause skin irritations and permanent loss of the sense of smell. *O'Connell v. Biomet, Inc.*, 250 F.3d 1278, 1280 (Colo. App. 2010) (product can be rendered "defective" by failure to give adequate warnings for proper and safe use). Centric argues that it is undisputed that in its many years of selling the product it never received any reports of any "allergic reactions" to the product. But the record indicates that, as early as 2005, Centric was in possession of the MSDS from J&N that showed that the anise oil had the potential to pose a variety of health hazards to its users, including skin, eye, and respiratory irritation, "anaesthetic effects," and allergic dermatitis. Centric argues that it cannot be held responsible for "unknown or unknowable allergies, sensitivities and idiosyncracies." *Oakes v. E.I. Du Pont de Nemours &*

*Co.*, 272 Cal. App. 2d 645, 651, 77 Cal. Rptr., 709, 713 (1969).

At this juncture, it is not necessary to decide whether Colorado courts would reach the same determination as did a California court. It suffices to observe that the MSDS warned of some of the same hazards that Mr. Howell experienced – skin irritation, dermatitis, and anaesthetic effects on his sense of smell, and that Centric had the MSDS before this incident occurred. At a minimum, such notice gives rise to a genuine issue of fact as to whether Centric had actual knowledge of a defect in the product of which it failed to give adequate warning. Accordingly, Centric is not entitled to summary judgment as a result of C.R.S. § 13-21-401.

    2. <u>Failure to warn</u>

Centric's second argument is related to its first. With regard to Mr. Howell's failure to warn claim, Centric argues that Mr. Howell cannot show that Centric had <u>actual</u> knowledge of any defect in the product, citing *Bond*, 868 P.2d at 1119. Centric points out that Mr. Howell himself admitted that some inmates use Centric's scented oils to place the oil on a light bulb, allowing it to diffuse into the air. Centric contends that Mr. Howell's decision to apply the oil to his skin for extended periods of time or to inhale vapors directly from the bottle is a use of the product of which Centric was previously unaware.

Although a defendant's knowledge of a products dangerousness is an element of a failure to warn claim, a jury could find that by virtue of the MSDS, Centric had knowledge that the product posed a risk of skin irritation and dermatitis. By definition, these conditions will occur – or at least are more likely to occur – when the oil is in contact with skin, thus defeating any contention that Centric could not have anticipated that customers would place the product

directly onto their skin.[4]  Plaintiff has produced evidence from the canteen's catalogue, which shows that the oil is sold along toiletry items such as shavers and wash cloths.  The anise oil is one of many scented oils offered for sale, including several advertised to smell like a particular brand of perfume.  This easily gives rise to an inference that the oils can be used in the same manner as a perfume, *i.e.*, applied directly to the skin.

Accordingly, the Court finds that there is a genuine issue of fact as to whether Centric could reasonably have anticipated that customers would use the product directly on their skin, thereby subjecting themselves to a risk of skin irritation and dermatitis.  Thus, Centric is not entitled to summary judgment on the failure to warn claim on this ground.

      3.  Causation

Finally, Centric argues that Mr. Howell cannot establish that the oil was the cause of his injuries without producing expert testimony as to the question of causation.  The Court assumes that causation is an essential element of all of the claims Mr. Howell's Amended Complaint can be construed to assert.

Because Mr. Howell is alleging that he was injured from a toxic substance, he has a two-fold burden of demonstrating causation; he must show: (i) that the substance at issue is capable of causing a particular injury or condition (general causation); and (ii) that the substance actually caused his particular injury (specific causation).  *Norris v. Baxter Healthcare Corp.*, 397 F.3d

---

[4]Moreover, the label on the bottle sold to Mr. Howell expressly stated that the product was "not for internal use."  A customer's natural understanding of the term "internal use" is likely to be "placed inside the body."  An instruction not to use a product for "internal use" gives rise to the inference that the product is otherwise suitable for "external use" – that is, to be placed on the body, as Mr. Howell did.  A reasonable factfinder could conclude that because Centric was aware that the product's label warned only against "internal use," Centric could reasonably have anticipated customers making external use of the product in a manner similar to that of Mr. Howell.

878, 881 (10th Cir. 2005).⁵  Taking the evidence in the light most favorable to Mr. Howell, as the Court must in evaluating Centric's motion for summary judgment, the MSDS alone might be sufficient to raise an issue of fact regarding general causation, *i.e.*, that anise oil, in sufficient quantities, could be capable of causing the types of injury alleged here.

But the MSDS is not sufficient to carry Mr. Howell's burden to establish specific causation – that the oil was the <u>actual</u> cause of his injury.  Under Colorado law, it is generally within the province of the fact-finder to determine the relationship between the defendant's conduct and the plaintiff's condition, as long as the evidence establishes "such facts and circumstances as would indicate with reasonable probability" that causation exists.  *Kaiser Foundation Health Plan of Colorado v. Sharp*, 741 P.2d 714, 719 (Colo. 1987).  Causation must be established beyond mere possibility or speculation.  *Id*.  Although causation may sometimes be inferred simply from circumstantial evidence, where questions of causation are beyond the knowledge and experience of ordinary persons, expert testimony may be required.  *Truck Ins. Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1214 (10th Cir. 2004); *see also In re Breast Implant Litigation*, 11 F. Supp. 2d 1217, 1226 (D.Colo. 1998) (expert testimony required in case where plaintiffs sought to establish that breast implants caused their illness, as the illness also existed in women without breast implants).

---

⁵Elements that may assist in establishing specific causation include the following: (i) the toxic substance at issue has been demonstrated to cause in humans the disease or illness suffered by the plaintiff; (ii) the individual has been exposed to a sufficient amount of the substance in question to elicit the health effect at issue; (iii) the chronological relationship between exposure and effect is biologically plausible; and (iv) the likelihood that the chemical caused the disease or illness is considered in the context of other known causes.  *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1156 (E. D. Wash. 2009) (citation omitted).  Of particular concern is the "dose-response" relationship, i.e., "the relationship in which a change in amount, intensity, or duration of exposure to a chemical is associated with a change in risk of disease" and the amount of the plaintiff's alleged exposure.  *Id*. at 1157 (citations omitted).

Rashes and other skin reactions are common to a variety of genetic and environmental factors, perhaps even more so in the confined circumstances of the prison environment. Thus, ascertaining what specific substance or reaction caused an individual to suffer a given rash or skin irritation is a complex question that is beyond the knowledge of the typical factfinder. Similarly, understanding the types of injuries and the physical mechanics that could cause a person to lose his or her sense of smell (or, at least, cause a person to suffer "injury of specialized nerve tissue at the top of the nose") is not within the knowledge and experience of an ordinary juror.

Without evidence as to other causes of such injuries and a reasonable basis for excluding the alternatives, or any information about what level of exposure would be sufficient to cause the alleged injury, the jury would be left with only the temporal relationship between these events from which to infer causation. This suggests only the possibility of a connection and is not a reliable basis for making an inference regarding specific causation. *In re Breast Implant Litigation*, 11 F. Supp. 2d at 1232.

This is especially true here - Mr. Howell testified that he has been applying oils to his lip in this fashion "since the '90s," but did not previously experience ill effects. Thus, any inferences the factfinder might draw from the temporal connection between Mr. Howell's use of the oil on his lip in August 2006 would also have to account for the <u>absence</u> of any causal connection from the many occasions that Mr. Howell did the same thing over many years yet did <u>not</u> suffer any adverse reactions from the oil. Under these circumstances, temporal proximity alone would be insufficient, as a matter of law, to permit the factfinder to conclude that Mr. Howell demonstrated specific causation. Accordingly, the Court finds that the element of specific causation in this case is one that must be proved by expert testimony.

It appears to be undisputed that Mr. Howell has not endorsed an expert witness to opine as to specific causation, as would be required under Fed. R. Civ. P. 26(a)(2). Mr. Howell appears to argue that he will attempt to prove specific causation by calling his treating medical providers as witnesses. This argument misunderstands the difference between percipient testimony, offered under Rule 26(a)(1), and expert testimony offered under Rule 26(a)(2). Percipient testimony – a witness testifying to something they saw, heard, said, or did – is subject only to the minimal disclosure requirements of Rule 26(a)(1); in other words, a party who wishes to call a witness to testify as to percipient matters need only identify that witness with the specificity required by Rule 26(a)(1). In contrast, expert (or, preferably, "opinion") testimony – that is, testimony by a person who did not see or hear what occurred but who, because of their training or experience, is qualified to review the evidence and give their <u>opinion</u> as to what <u>probably</u> occurred – is subject to far more stringent rules. Rule 26(a)(2) requires that a party intending to offer opinion testimony disclose the identity of the expert; a written report by the expert detailing the expert's qualifications, opinions, and the expert's explanation of how it reached those opinions; a list of all prior cases that the expert has recently testified in; and various other items of information. Moreover, opinion testimony is inherently a source of concern for the Court, as such testimony – by somebody who was <u>not</u> present for an event, yet who is allowed to offer an opinion as to what might have happened at that event – carries with it the potential for significant prejudice. As a result, opinion testimony is subject to more stringent rules of evidence and an opportunity for the party against whom such evidence will be offered to challenge it based on those rules. *See* Fed. R. Evid. 702.

For these reasons, Mr. Howell's endorsement of his treating physicians as witnesses under Rule 26(a)(1) is insufficient to permit him to call those witnesses as experts under Rule

26(a)(2). Mr. Howell has not, for example, produced a written report by his treating physicians that expresses an opinion that the anise oil was the specific cause of his injuries, much less identifying the reasons why that physician reached that conclusion. Moreover, the records submitted by Mr. Howell, both in opposition to Centric's motion and in support of his own motion, indicate that his treating physicians have never expressed an opinion that the oil was the cause of his injuries. The March 2007 medical records indicate that Mr. Howell's doctor believed that he lost his sense of smell due to an injury to nerve tissue at the top of his nose, but does not go on to express an opinion that the injury was specifically caused by the anise oil. Thus, even if the Court were to treat Mr. Howell's disclosure of his medical providers as a proffer of expert testimony under Rule 26(a)(2), Mr. Howell has nevertheless failed to come forward with a statement, report, or other expression of opinion by an expert that the <u>oil</u>, and not any other substances, disease, or condition, was the specific cause of his injuries.

Without such evidence, Mr. Howell fails to raise a genuine issue of fact with regard to the question of specific causation, an element present in all of his claims.[6] Accordingly, Centric is entitled to summary judgment on all of Mr. Howell's claims.

**B. Mr. Howell's motion**

As discussed above, when a party with the burden of proof – here, Mr. Howell – moves for summary judgment, that party has the burden of coming forward with sufficient evidence to demonstrate <u>every</u> element of each claim for which judgment is sought. The preceding discussion indicates that specific causation is an element of all of Mr. Howell's claims, and yet

---

[6] Mr. Howell argues in the alternative that the burden should be shifted to Centric to show that the anise oil did not cause his injury. However, the cases he cites do not support burden-shifting in these circumstances, as they concern specific legal frameworks applicable to asbestos litigation and joint-tortfeasors.

Mr. Howell has not come forward with sufficient evidence to demonstrate sufficient causation. Accordingly, Mr. Howell's motion for summary judgment is denied.

IT IS THEREFORE ORDERED that

(1) Defendant Centric Group, LLC's Motion for Summary Judgment **(#82)** is **GRANTED**. Upon resolution of the remaining issues in the litigation, the Clerk shall enter judgment in favor of Centric and against Defendant on all claims.

(2) Plaintiff Thomas Howell's Motion for Summary Judgment (**83)** is **DENIED**.

(3) Plaintiff's Motion to Amend his Motion for Summary Judgment (#**90**) is **GRANTED**.

Dated this 27th day of September, 2011

BY THE COURT:

_____

Marcia S. Krieger
United States District Judge